## METROPOLITAN BANK v. ENGEL et al.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

**1. BILLS AND NOTES—ACTION AGAINST INDORSERS—DEFENSE.**
The indorsers of a note cannot claim that it had no legal inception, and was put into circulation contrary to the purpose of its creation, where their answer contains no such defense, and there is no proof that the payees were cognizant that the note was designed for a specific purpose.

**2. SAME—BONA FIDE PURCHASERS.**
Bona fide holders of a note cannot be defeated in an action against indorsers on the ground that it had no legal inception, and was put into circulation contrary to the purpose which induced its creation.

**3. SAME—PROTEST—NOTICE.**
Where a note is protested, and the notary, not knowing the residence or place of business of any of the indorsers except the last, forwards all the notices to him, and he without delay sends the prior indorsers the manifests of such protest, such notice is sufficient to bind the prior indorsers.

**4. SAME—PLEADING.**
Where a note has been transferred by the payees, an allegation in an action by the holder against prior indorsers that it was delivered to plaintiff by the defendants is proper.

**5. SAME—PRESENTATION FOR PAYMENT.**
Where a note on day of maturity is presented to the bank where payable during banking hours, it is unimportant that the notary protesting it presented it for payment after the bank closed.

Action by the Metropolitan Bank against Adam Engel and another, impleaded. A verdict was directed for plaintiff, and exceptions were ordered to be heard in the first instance at the appellate division. Exceptions overruled.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Shire & Jellinek, for plaintiff.
M. Hallheimer, for defendants.

SPRING, J. This action was commenced January 31, 1900, to recover upon a promissory note of $3,000 given by the Mt. Vernon

Consumers' Brewing Company, a domestic corporation of the city of New York, and dated December 9, 1899, due 45 days from its date, to the order of Schaefer & Bro., and payable at the Nineteenth Ward Bank of New York City. The signature of the brewing company was attested by John A. Schappert, its president, and by C. A. Schaefer, its secretary and treasurer. The note was indorsed by the defendants Schappert and Engel at the instance of an officer of the brewing company, of which both indorsers were officers. The payees, who had a place of business in Buffalo, indorsed the note and sold it to the plaintiff before maturity for a valuable consideration, and in the usual course of business. The note was not paid at maturity, was presented for payment, which was refused, and thereupon protested for nonpayment, and two of the indorsers defend.

It is contended that the note had no legal inception, but was diverted and put into circulation contrary to the purpose which induced its creation. There are several barriers to this contention: (1) The answer contains no such defense. (2) While the defendants testified the note was given to discharge a precedent debt which in fact had been paid, yet the proof is far from convincing as to the manner in which this payment was made. But, passing that question, there is no proof that the payees were cognizant that the note was designed for a specific use. It was presented to the defendants for indorsement by the bookkeeper of the maker, and after their indorsements was taken back to the office by this clerk; and no restriction as to its use appears to have been given to the bookkeeper or to any of the brewing company, or to Schaefer & Bro. Schappert had signed the note on its face, officially vouching for the signature of the corporation as maker; and it was therefore duly executed, indorsed, and left at the office of the maker, ostensibly with the expectation that it was to be delivered to the payees and put into circulation as commercial paper. (3) Again, the plaintiff purchased the note from the payees for a valuable consideration and before maturity. The note was regular in form, and there is no pretense that the plaintiff had any hint or intimation it contained any infirmity, if such existed. It is too late for these indorsers, who were responsible for putting the note into circulation, to shield themselves from liability against a bona fide holder on the ground that the note was used differently than they expected. It is urged that the note was not properly presented or protested to bind these defendants. On January 8, 1900, the plaintiff indorsed the said note: "Pay to J. F. Thompson, cashier, or order. Metropolitan Bank, Buffalo, N. Y., Jacob Dilcher, Cashier" (and said Thompson was cashier of the Seaboard National Bank of New York),—and sent the same to the latter, its New York correspondent, for collection, although the indorsement in terms was not so restricted. The note became due on the 19th, and on the afternoon of that day a messenger of the Seaboard Bank presented it for payment to the Nineteenth Ward Bank, where it was made payable, and payment was refused because of insufficient funds to meet it. During the afternoon of that day the note was delivered to the notary who attended to protesting notes on behalf of the Seaboard Bank, and notices of protest were pre-

pared by him for each indorser, and they were all mailed to the plaintiff late that evening, who appeared as last indorser upon the note. The succeeding day was Saturday, and, as the plaintiff is closed on Saturday afternoons, the notices were not received until Monday morning at the bank. The officers of the bank did not know the address of either of the defendants, or the New York address of Schaefer & Bro., but did know the place of business of the latter in the city of Buffalo. The notices were immediately mailed to this address, and received about noon of the same day. The accountant of that firm at once inclosed the notices of protest in an envelope directed to Mr. Schaefer at his New York address, with a letter requesting him to forward the notices contained in the envelope to the proper parties. This letter, with the inclosures, was received by Mr. Schaefer in the afternoon of January 23d; and he at once directed the shipping clerk of the receiver of the brewing company to mail one to Mr. Engel, and the other to Mr. Schappert, which was done, and they were received by these gentlemen the following morning. The notary, Abraham, did not know the residence or place of business of any of the indorsers except the Metropolitan Bank, the last indorser, and he forwarded all the notices to that bank, in strict compliance with section 175 of the negotiable instruments law (chapter 612 of the Laws of 1897). From that time on there was no delay, and the duty imposed upon the indorsers to notify those antecedently liable was fully met.

To summarize our disposition of the material questions raised by the defendants' counsel, we are satisfied: (1) That the plaintiff is a bona fide holder of the note. (2) That the defendants are liable to the payees, as well as to all subsequent parties to the note. Section 114, subd. 1, Negotiable Instruments Law. The payees were accordingly the agents of the defendants to negotiate the note, and the allegation in the complaint that it was delivered to the plaintiff by the defendant Engel is strictly correct, according to the face of the paper and the tenor of the indorsements. (3) The fact that the note was presented for payment by the notary to the bank where payable after it had closed (it being in the evening) is unimportant. The note had, during banking hours of the day it matured, been duly presented for payment at that bank, and payment refused, thus complying fully with Negotiable Instruments Law, §§ 131, 135. (4) The plaintiff being the last indorser on the note, and the notary not knowing the address of any of the other indorsers, he very properly mailed all the notices to the plaintiff, thus shouldering the responsibility upon the bank to protect itself by sending manifests of protest to the prior indorsers, which it did. (5) Even if the plaintiff was not in fact an indorser, neither defendant had given his address upon the note, and the notary, not knowing it, might well assume that the indorsers all resided in Buffalo, and so mailed them to the party who would be most likely to notify them. The object of the requirement as to giving notice is to insure to the indorsers prompt and timely information of the default of their principal, and the course adopted by the notary was effective to carry out that purpose. There is a legion of other exceptions,

which we do not regard of sufficient moment to call for independent discussion.

The exceptions of the defendant should be overruled, and motion denied, and judgment ordered for the plaintiff on the verdict, with costs and disbursements. So ordered. All concur.