LUCY J. GLEASON vs. CHARLES F. THAYER.

Second Judicial District, Norwich, April Term, 1913.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and WILLIAMS, Js.

A bank which receives a note for collection thereby becomes, as matter of law, an agent for the owner and holder of the note.

A finding should not set forth mere conclusions of law necessarily arising from the facts found; and therefore the trial court may very properly refuse to incorporate in its finding a statement contained in the draft-finding, to the effect that banks, in forwarding and presenting for payment a note left with them for collection, were acting as agents of the owner and not as holders of the note.

The fact that at the trial of an action on a protested note the indorsement of one of the intermediate holders appeared to be erased is unimportant; and there is no reason for adding this fact to the finding.

In its popular significance the word "protest" includes all the steps necessary to establish the liability of an indorser upon a dishonored note, and both the banking business and the law merchant have adopted this use of the term. An allegation that the note in suit "was duly protested for nonpayment" sufficiently alleges, therefore, due notice to the indorsers of its nonpayment.

The law of the State where a note is payable governs as to the notice of nonpayment required to be given to indorsers.

Under § 697 of the General Statutes, our courts take judicial notice of a statute appearing in the printed statute book of another State.

A bank holding an indorsed note for collection may give notice of its dishonor to all parties liable thereon, or only to its principal from

whom it received the note, leaving the latter to notify in turn its principal or antecedent indorser, and so on down the line.

In the present case the collecting bank, through its notary, mailed two notices of protest to the forwarding bank, on the day of the note's presentment and dishonor, and on the following day the latter bank received and remailed them to the defendant's post-office, where they were received in due course, but were not taken from the mail by the defendant until several days later. *Held* that both banks had used due diligence, and that the defendant had received all the notice of dishonor he was entitled to, either under the Negotiable Instruments Act, or the common law of New York, which, in this particular, did not differ from the common law of Connecticut.

Argued April 30th—decided July 25th, 1913.

ACTION against the payee and accommodation indorser of a negotiable promissory note, brought to and tried by the Superior Court in New London County, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff for $1,540, and appeal by the defendant. *No error.*

One Hendrick made at Norwich, Connecticut, to the defendant, as payee, the promissory note in suit, payable at the Columbia Trust Company in New York City, and the defendant indorsed the note for the accommodation of Hendrick; subsequently the plaintiff became and still is its owner for value, and, before it became due, deposited the same with the National Whaling Bank of New London for collection. The bank indorsed the note, guaranteed the indorsements, and transmitted it to the National Park Bank of New York, for presentment to the Columbia Trust Company, and for collection. The National Park Bank duly presented the note for payment, and, the same being refused, it caused, by a notary, due protest of the note to be made on August 7th, 1911, and on August 8th, 1911, the notary mailed a written notice of the presentation, nonpayment, and dishonor of the note in an envelope addressed to the defendant at New London, Connect-

icut, postage prepaid; this letter was at some time re-addressed to the defendant at his residence in Norwich, Connecticut, and in due course of mail reached him on August 11th, 1911.

The notary, also on August 8th, 1911, enclosed in an envelope addressed to the National Whaling Bank two similar notices addressed to the defendant, and the bank received them August 9th, 1911, and on the same day mailed them in an envelope, postage prepaid, addressed to the defendant`at Norwich, Connecticut, where they were received in due course of mail, but were not taken from the post-office by the defendant until August 14th, 1911.

No part of this note has been paid.

*Donald G. Perkins,* for the appellant (defendant).

*Tracy Waller,* for the appellee (plaintiff).

WHEELER, J. The defendant objects to the finding, in terms or effect, that the Whaling and Park banks were holders of this note, and to the refusal to find that they were agents.

These banks received the note for collection; from that relation they became, in law, agents of the owner and holders of the note. The finding that they were holders is a necessary inference from the facts proven, and their agency for the owner is a necessary conclusion of law, and whether it is in the finding or not is immaterial. "Such agents are recognized in the law as 'holders for collection.'" *Bartlett* v. *Isbell,* 31 Conn. 296, 299.

The fact that the indorsement of the Whaling Bank now appears to be erased on the note is unimportant, and furnishes no ground for adding this fact to the finding.

Another assignment of error is the rendition of judgment against the defendant indorser, based upon the giving of the notice of dishonor, when no such allegation

Gleason *v.* Thayer.

is found in the complaint. The defendant is mistaken in his assumption that the giving of notice of dishonor is not alleged in the complaint. It is alleged that the note "was duly protested for the nonpayment thereof." Presentment for payment, protest, and notice of dishonor are terms of the law, each having a different meaning and comprising independent acts. In its popular significance "protest" includes all the steps necessary to establish the liability of an indorser upon a dishonored note. Therefore, when it is alleged that due protest was made, it will ordinarily be understood that presentment, protest, and notice have been had, since the contract of the indorser under the law merchant depends upon presentment and refusal to pay and due notice to the indorser. The law merchant and the banking business have adopted in ordinary use the popular sense of this term. *City Savings Bank* v. *Hopson,* 53 Conn. 453, 455, 5 Atl. 601; *Coddington* v. *Davis,* 3 Denio (N. Y.) 16, 25; *Townsend* v. *Lorain Bank,* 2 Ohio St. 345, 353; *Wolford* v. *Andrews,* 29 Minn. 250, 251, 13 N. W. 167; *Wood River Bank* v. *First Nat. Bank,* 36 Neb. 744, 747, 55 N. W. 239; 2 Daniels on Negotiable Instruments (5th Ed.) § 929; Norton on Bills & Notes (3d Ed.) § 144, p. 361.

The defendant's second defense was that no notice of dishonor as required by law was given him. The trial court's conclusion upon the facts that the notice was adequate is assigned as error. Since the place of payment was New York, the law of that jurisdiction governs as to the giving of the notice. *Guernsey* v. *Imperial Bank,* 188 Fed. Rep. 300, 110 C. C. A. 278.

The Negotiable Instruments Act is a part of the law of New York, of which we take judicial notice. General Statutes, § 697.

The National Park Bank might have given notice to the parties liable upon the note, or to its own prin-

cipal. 3 Consolidated Laws of New York, p. 3675, § 165 of the Negotiable Instruments Law. It, through the notary, on the day of presentment, gave notice to the Whaling Bank, from whom it received the note, by mailing two notices of protest to it. On the next day, upon receipt of the notices, the Whaling Bank forwarded them to the defendant at his proper address by mail, thus complying with the Negotiable Instruments Law. 3 Consolidated Laws of New York, p. 3678, § 178. So that the requirements of this law were fully met. This law in these particulars reaffirms the law merchant, and conforms to the universal custom of banks, from which custom the law grew.

A bank holding an indorsed note for collection is only required to give notice of dishonor to its principal from whom it received the note, and its principal in turn notifies its principal or antecedent indorser, and so down the line. *Mead* v. *Engs*, 5 Cow. (N. Y.) 303; *Stafford* v. *Yates*, 18 Johns. Rep. (N. Y.) 327; *Spencer* v. *Ballou*, 18 N. Y. 327; *Phipps* v. *Millbury Bank*, 49 Mass. (8 Met.) 79; *United States Bank* v. *Goddard*, 5 Mason (U. S. C. C.) 366; Norton on Bills & Notes (3d Ed.) pp. 381, 382; 1 Morse on Banks & Banking (4th Ed.) § 232; *East Haddam Bank* v. *Scovil*, 12 Conn. 303, 311.

Both the Park Bank and the Whaling Bank used due diligence, and the defendant received all the notice of dishonor he was entitled to, either under the Negotiable Instruments Act, or under the common law of New York, which, so far as the giving of notice of dishonor is concerned, does not differ from our own common law. As this notice was sufficient, we need not inquire as to the sufficiency of the notice directed to the defendant at New London.

There is no error.

In this opinion the other judges concurred.