RUTH SIMON, PLAINTIFF-APPELLEE, v. PEOPLES BANK AND TRUST COMPANY OF PASSAIC, A CORPORATION, AND/OR J. VINCENT McGUIRE, AND/OR THE HAMILTON TRUST COMPANY, A CORPORATION, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.

Submitted February 14, 1936—Decided May 14, 1936.

For Peoples Bank and Trust Company of Passaic and J. Vincent McGuire, *William N. Gurtman.*

For The Hamilton Trust Company, *Albert Comstock.*

For the plaintiff-appellee, *Koch & Simon* and *Paul Rittenberg.*

The opinion of the court was delivered by

BODINE, J. The plaintiff was the holder of the note of Robert H. Simon endorsed by I. Frucht, payable at the Peoples Bank and Trust Company of Passaic. Before maturity, she left the note with the Hamilton Trust Company of Paterson for collection. The proofs reveal no special contract. In the usual course of business, it sent the note to the Federal Reserve Bank which forwarded it to the Passaic bank. The note was duly presented for payment by that bank, and notice of dishonor was mailed, addressed to each party liable thereon, in care of the Hamilton Trust Company. These notices were received by that company the next day. Thereupon all the notices were mailed to the plaintiff, who having failed to collect by suit against the maker and endorser, brought this action against the Peoples Bank and Trust Company of Passaic, its cashier, and the Hamilton Trust Company alleging negligence. The defendants had judgment in the District Court. On appeal, the Supreme Court reversed the judgment. In this there was error.

Banks are constantly sending bills and notes from one part of the country to another for collection. The Passaic bank was a mere agent of the Paterson bank for effecting the collection. It was bound to make a legal demand upon the promisor for payment, and upon non-payment to give due notice of the dishonor to the Paterson bank. To hold the Passaic bank to a greater duty would be most unreasonable. It had not discounted the paper and presumably knew nothing

concerning the endorsers or their residences. Had the plaintiff desired that the Passaic bank notify the endorser she could have given specific instructions. *Phipps* v. *Millbury Bank,* 49 *Mass.* 79.

The next question arises as to the duty of the Paterson bank. It also took the note only for collection. It was a mere agent for the plaintiff—and like its subagent presumably knew nothing concerning the endorsers or their residences—and as to her its duty was fully performed when it gave timely notice of the dishonor of the note so that she could notify, if she desired, the prior parties to be charged. It is of no significance that a notice placed in the mail was not received. Sections 105 and 106 of the Negotiable Instruments act. 3 *Comp. Stat., p.* 3747; *Mumford* v. *Coghlin,* 249 *Mass.* 184; 144 *N. E. Rep.* 283.

"It is the duty of the collecting bank to give the depositor notice of the dishonor of paper deposited with it for collection. The weight of authority is to the effect that the bank is not bound to notify all the prior parties, but need give notice only to the holder, its immediate endorser, as whose agent it acts; but an obligation to notify all prior parties may be thrown on the bank by special contract." 7 *C. J.* 611.

Section 94 of the Negotiable Instruments act (3 *Comp. Stat., p.* 3746) provides: "Where the instrument has been dishonored in the hands of an agent, he may either himself give notice to the parties liable thereon, or he may give notice to his principal. If he gives notice ·to his principal, he must do so within the same time as if he were the holder, and the principal upon the receipt of such notice has himself the same time for giving notice as if the agent had been an independent holder."

This enactment is but declaratory of the common law. The holder of a note taking it to a bank for collection is familiar with the financial responsibility of the maker, and endorsers, and can easily disclose the addresses of those to be charged and request that they be notified in the event of default. In the absence of specific instructions, the bank need do no

more than promptly report the fact to its principal and the principal may then notify those to be charged. The statute makes, if it be needed, the mailing of notices to the principal sufficient to relieve the agent. Any other rule would cast too great an obligation upon banks. The bank, if it assumes no more, performs its duty by giving its principal notice in accordance with the terms of the statute. He may then give notice to antecedent parties. See section 107 *N. I. L.;* 3 *Comp. Stat., p.* 3747. Also *Gleason* v. *Thayer,* 87 *Conn.* 248; 87 *Atl. Rep.* 790; *Farmers National Bank* v. *Peoples National Bank,* 263 *Pa.* 266; 106 *Atl. Rep.* 311.

The judgment of the Supreme Court is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ. 11.