JOHN WILLS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE CITIZENS NATIONAL BANK OF NETCONG, NEW JERSEY, A BANKING CORPORATION OF THE UNITED STATES OF AMERICA, DEFENDANT-RESPONDENT.

Submitted May 31, 1940—Decided December 12, 1940.

For the plaintiff-appellant, *Milford Salny*.

For the defendant-respondent, *King & Vogt*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The trial court in this case directed a verdict against the plaintiff on the theory that the defendant bank was entitled to set-off against the plaintiff's funds on deposit in the bank, the amount of two unpaid notes on which the plaintiff was an endorser, without notice to the endorser that the negotiable instruments had been dishonored by their makers. The record discloses that the plaintiff, a corporation of this state, had discounted at the defendant bank two notes which had been given plaintiff by its customers. The notes had been renewed from time to time. The due date of both instruments was July 13th, 1939. A month previous to the due date the cashier of the bank, by letter, informed the plaintiff that the notes (listing them) "held by us and endorsed by you" must be paid in full at maturity.

They were not paid on the date due and at the close of business on that day the bank debited the account of the plaintiff with the bank and later that evening mailed the notes to the plaintiff, writing plaintiff as follows: "We charge your account and return herewith, for reasons stated below. Note of A. Alberts due to-day, endorsed by you." Like notice accompanied the second note. At the trial the defendant bank stated that the note and letter in each instance was put in the mail on that day before four-forty-five in the afternoon, and that the items were charged against plaintiff's account before the notes were put into the mail.

It is entirely settled in this state that as between a bank and a depositor the money deposited by the latter with the former creates the relationship of creditor and debtor between the depositor and the bank. It is also settled that the right of set-off does not exist unless each of the parties owes a stated sum to the other. "Set-off, both at law and in equity, must be understood as that right which exists between two parties each of whom under an independent contract owes an ascertained amount to the other to set-off his respective debts by way of mutual deduction so that in any action brought for the larger debt, the residue only, after such deduction, shall be recovered." 24 *R. C. L.* 792. In this case there were no mutual debts; consequently there was no right to a set-off.

The plaintiff admittedly was an endorser and notice of dishonor of the paper in question was not waived expressly or by conduct. "Except in so far as it is excused, dispensed with, or waived, the rule under the Negotiable Instruments act, as at common law, is that each endorser of a negotiable instrument dishonored by non-acceptance or non-payment must be given notice of dishonor and any endorser to whom such notice is not given is discharged from liability thereon. Such notice is a condition precedent to the endorser's liability; it is for his benefit and is the second essential step which must be taken in order to charge him with liability on the instrument." 10 *C. J. S.* 898, § 384.

The right to set-off is regulated in this state by statute, *R. S.* 2:26-190; and the liability of an endorser is likewise regulated by statute, *R. S.* 7:2-66. An endorser warrants

that if the paper be dishonored and the necessary proceedings on dishonor duly taken, he will pay the amount due to the holder or to any subsequent endorser who might be compelled to pay it. This court, in *Corn Exchange National Bank and Trust Co.* v. *Taubel,* 113 *N. J. L.* 605, speaking through Mr. Justice Heher, had occasion to say that "An endorser without qualification engages that, on due presentment, the negotiable instrument shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it. * * * The contract of an endorser is separate and distinct from the contract contained in the note. It imposes a liability independent of that assumed by the maker. The endorser without qualification of the ordinary promissory note undertakes to pay the holder the amount thereof only if the maker fails to do so upon due presentment to him for payment, and due notice of non-payment is given the endorser. The endorser's liability is therefore contingent on the default of the maker and the taking on dishonor of the requisite statutory proceedings. It is a conditional liability, and substantial compliance with the provisions of the Negotiable Instrument act relating to presentment, demand for payment, and notice in the event of dishonor, is an indispensable requisite to absolute liability."

Adverting to the facts in this case, it is conceded by the bank that the plaintiff's account was debited by the amount of the notes, prior to the time that notice of their non-payment was deposited in the post office. *R. S.* 7:2-105 provides: "Where notice of dishonor is duly addressed and deposited in the post office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails." See *Simon* v. *Peoples Bank and Trust Company of Passaic,* 116 *N. J. L.* 390; 184 *Atl. Rep.* 793. Obviously a writing giving notice of dishonor is utterly without effect until it has been mailed, *i. e.,* deposited in the post office or in any letter box under the control of the post office department. Since the notices in this case had not yet been deposited in the mails at the time the plaintiff's account was charged with the

amounts of the notes, and since an endorser is not liable on a note of another until notice has been given (*R. S.* 7:2-66; *Corn Exchange National Bank and Trust Co.* v. *Taubel, supra*), there was no debt due the bank from the plaintiff at the time the latter's account was charged, and such debit or set-off was unauthorized (*R. S.* 2:26-190).

It appears that the notice to the plaintiff that its account had been debited or charged with the amount of the notes, was dated July 13th, and that on the previous day plaintiff had issued a check in the amount of $1,700, which check was presented about two weeks later. The plaintiff's account, having been depleted by the amount of the notes charged against it, was not sufficient to clear the check although otherwise it would have been. The bank refused payment and the check was returned with the notation "insufficient funds." The plaintiff then, on August 15th, 1939, drew a check to its own order for the total amount of its deposit, without regard to the amount that had been deducted from or charged against its account for the notes on which it was endorser. That check, too, was dishonored and returned by the bank, marked "insufficient funds."

The grounds of appeal relied upon and argued by the appellant are that the trial court erred in directing a verdict in favor of the defendant and against the plaintiff, and that it was error to deny plaintiff's motion for a directed verdict in its behalf. The legal principle involved here already has been discussed. On the facts of this case, we conclude that the court erred in directing a verdict against the plaintiff and in favor of the defendant because at the time plaintiff's account was debited no right of set-off existed in favor of the defendant bank. The relationship of the bank to the plaintiff was not that of creditor. The plaintiff was not in its debt. Under the circumstances, the debiting of the account being legally without justification, it was error to refuse plaintiff's motion for a directed verdict in its favor.

The judgment is accordingly reversed. Prior to the trial the bank had returned to the plaintiff the amount on deposit less the amount of the deductions mentioned. A judgment should now be entered in favor of the plaintiff in the sum of $1,152.87 which is the amount of the attempted set-off.

BODINE, J. (Dissenting.) The defendant bank discounted certain notes for the plaintiff corporation crediting the proceeds to its account. The notes were renewed from time to time, the last on June 13th, 1939, at which time the plaintiff was notified that the notes must be paid at maturity, July 13th, 1939. They were not paid, and at the close of business on that day the customer's account was charged with the amount due on the notes. Notice of this, together with the original notes, was then mailed to the customer and was apparently received the next day. The present action is for damages, because of the failure to pay checks presented some weeks later in excess of the amount then on deposit after the charge made for the defaulted notes.

"It is a general rule that a bank has the right to set-off or apply the deposit of its debtor to the payment of his matured debts, upon the theory that as the depositor is indebted to the bank upon a demand which is due, the funds in its possession may properly and justly be applied in payment of such debt, and it has therefore a right to retain such funds until payment is actually made." *Marmon, &c., Co.* v. *The Peoples, &c., of Elizabeth,* 106 *N. J. Eq.* 170, 173.

The majority opinion proceeds on the theory that the right of set-off did not accrue till after the liability of the endorser was fixed by notice of dishonor. Even so, we think there was sufficient notice and presentment to charge the endorser. It appears that at the close of business the notes were not paid. The bank wrote and mailed to the endorser letters in the following form enclosing the dishonored notes: "The Citizens National Bank of Netcong, Netcong, N. J., July 13th, 1939, John Wills, Inc. We charge your account and return herewith for reasons stated below Note of A. Alberts due to-day, endorsed by you. Amt. $572.87. Total $572.87." "The Citizens National Bank of Netcong, Netcong, N. J., July 13th, 1939, John Wills, Inc. We charge your account and return herewith for reasons stated below Note of Charles Veigel due to-day endorsed by you. Amt. $580. Total $580." Clearly. the endorser knew that the makers had not paid the notes. Hence, the charge. *Burgess* v. *Vreeland,* 24 *N. J. L.* 71.

*N. J. S. A.* 7:2-96 is as follows: "The notice (of dishonor) may be in writing or merely oral and *may be given in any terms which sufficiently identify the instrument, and indicate that it has been dishonored by non-acceptance or non-payment;* it may in all cases be given by delivering it personally or through the mails." Italics ours.

The writings sent identify the instruments and indicate that they were not paid and that they had been. charged against the plaintiff's account. The plaintiff was not delayed in its action against the maker. We deem the notices sufficient. *Dodson* v. *Taylor,* 56 *N. J. L.* 11; *Haines* v. *Dubois,* 30 *Id.* 259; *Sussex Bank* v. *Baldwin,* 17 *Id.* 487.

The notes were payable at the defendant bank. The drawer apparently had no accounts there. Presentment was not necessary to charge the drawer. *N. J. S. A.* 7:2-79 is as follows: "Presentment for payment is not required in order to charge the drawer where he has no right to expect or require that the drawee or acceptor will pay the instrument." Also *Weed* v. *Van Houten,* 9 *N. J. L.* 189.

But as to presentment, where a note is payable at a specific bank it seems sufficient evidence of presentment if the note be there on the date of maturity and is not paid.

In *Rosenthal* v. *Levine,* 148 *Atl. Rep.* 675, it was said: " 'Where a note is  *  *  *  payable at a bank it is sufficient that the note is there ready to be given up on payment, should the promisor come to pay it.' *Gilbert* v. *Dennis,* 3 *Metc.* (*Mass.*) 496; 38 *Am. Dec.* 329. 'It is sufficient presentment of a note payable at a bank if it is actually in the bank at maturity ready to be delivered on payment.' " *N. J. S. A.* 7:2-73; *Brannan's N. I. L.* (*6th ed.*) and cases collected, *pp.* 857, *et seq.*

When the notice indicating dishonor of the notes endorsed by the plaintiff was in the mails the right of set-off existed. *N. J. S. A.* 7:2-105. Under the statute the notice deposited in the mail fixed liability.

The legal right to charge endorser's account then existed a few minutes after the actual charge was made. If the charge was premature no harm was done because the bank was closed for the day when it was made. On the next morning, on any

theory of the case, the right existed. To invalidate the charge as premature by a fraction of an hour would be due to too great a nicety in bookkeeping requirements.

Formal notice of protest is necessary only in the case of a foreign bill of exchange. *N. J. S. A.* 7:2-118. The maker of a note is not entitled thereto. *Fidelity Union Trust Co. v. Decker Building Material Co.,* 106 *N. J. L.* 132. No formal protest of a note, aside from a sufficient notice of dishonor, is necessary to fix the liability of the endorser. *Sussex Bank v. Baldwin, supra.*

It is also settled that the right of the bank to charge up defaulted paper against its customer's account at common law is optional and well recognized. *National Mahaiwe Bank v. Peck,* 128 *Mass.* 298. Certainly, a bank discounting paper for a customer looks to him to see to payments or renewals and it is unwise to defeat sound banking practice.

"The accepted rule in most jurisdictions is that while a bank which is the holder of a note or bill of exchange may, if it chooses to do so, apply to its payment the funds of an endorser, or other person secondarily liable on the instrument, on deposit with the bank, it is under no obligation or duty, either towards other endorsers or towards the person primarily liable, to apply such deposit in payment of the instrument." 7 *Am. Jur.* 467, § 645.

"Where a note has been discounted for an endorser's benefit, it is considered that the endorser's deposit may be applied in payment thereof at the option of the bank." *C. J. S.* 624, § 300.

The checks complained of were not presented to the bank till after the notes discounted for its benefit fell due and were not paid. The bank was under no obligation to create an overdraft, in order to honor plaintiff's check. Bankers should not be obliged to suffer the loss of money because accommodated customers do not fulfill their obligations.

In *Landers Co. v. Lincoln-Alliance Bank* (*C. C. A. 5th*), 298 *Fed. Rep.* 79 (37 *A. L. R.* 576), writ of *certiorari* denied, 265 *U. S.* 593, this rule was applied. The note of the learned author in the report in 37 *A. L. R.* 578, is as follows: "It seems that there is no question but that a bank having on

deposit at the time of the maturity of a negotiable instrument of which it is the holder, funds belonging to one secondarily liable, may apply deposits to the payment of the instrument. 3 *R. C. L. tit. 'Banks and Banking,'* § 224."

The cases examined in many jurisdictions support the text. We think the judgment of the court below was proper and should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, PARKER, BODINE, DONGES, WELLS, JJ. 5.

*For reversal*—THE CHIEF JUSTICE, CASE, HEHER, PERSKIE. PORTER, DEAR, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 9.